SO ORDERED: February 05, 2009.

_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RONALD WAYNE MITCHELL | ) | CASE NO. 08-8448-AJM-7 |
| | ) | |
| Debtor | ) | |

**ORDER GRANTING DEBTOR'S MOTION
SEEKING RELIEF FOR VIOLATIONS OF THE AUTOMATIC STAY**

This matter came before the Court on January 21, 2009 upon the Debtor's Motion Seeking Relief for Violations of the Automatic Stay allegedly committed by creditor David Fiesbeck. Present at the January 21st hearing were Colby Leonard for the Debtor and Brad Schooley for David Fiesbeck ("Fiesbeck"). This entry constitutes findings of fact and conclusions of law to the extent required by Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure.

1

*Background*

The Debtor filed a chapter 13 case on July 16, 2008 (the "Petition Date"). Among the creditors listed on Schedule F was "David Fiesbeck" in the amount of "0.00". The notation included under the "date claim was incurred" column was "95" and "notice only". The bankruptcy noticing center issued the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadline" (the "§341 Meeting Notice") on July 18, 2008 to all creditors listed in the Debtor's schedules. Contained in that notice on page 2 in the second box from the top of the page was, in part, the following language:

| Creditors Generally Not Take Certain Actions | Prohibited collection actions against the debtor and certain codebtors are listed in Bankruptcy Code §362 and §1301. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment...... |
|---|---|

As evidenced by the July 20, 2008 certificate of service, a copy of the §341 Meeting Notice was served on David Fiesbeck on July 20, 2008 and there is no notation that notice served on Mr. Fiesbeck was returned to the Clerk's office as undeliverable.

Although there was conflicting testimony as to the number of times Fiesbeck contacted the Debtor after the Petition Date, there is no dispute that Fiesbeck contacted the Debtor either by telephone or in person at least twice between July 18th and December 5th. Fiesbeck says he remembered contacting the Debtor only twice – on July 18th and December 5th, and, as of July 18th, he didn't know that the Debtor had filed bankruptcy and couldn't remember when exactly he became aware of the bankruptcy filing. Fiesbeck argues that since no one told him not to contact the Debtor, he believed it was permissible to do so, to make arrangements for repayment of the debt. The

2

Debtor's motion [1] alleges that Fiesbeck contacted him three times by telephone on July 18th and came to the Debtor's house on July 19th, August 6th and December 5th. This is supported by the Debtor's testimony that he was contacted six (6) times by Fiesbeck from the Petition Date to December 5th. The Debtor also testified that, with each contact, Fiesbeck was told not to contact the Debtor directly but to call the Debtor's attorney. On August 13, 2008, attorney J. Bradley Schooley entered an appearance on Fiesbeck's behalf in the bankruptcy case and filed a proof of claim on August 26, 2008 in the amount of $153,444.93. Attorney Schooley also attended and represented Fiesbeck at the §341 meeting on September 18, 2008.

### *Discussion*

### *Damages under §362(k)(1) for Violations of the Stay*

The Debtor alleges that Fiesbeck willingly violated the automatic stay and seeks damages under 11 U.S.C. §362(k)(1) which provides:

> (1) Except as provided in paragraph (2) [2], an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

(Footnote added). Fiesbeck acknowledges a technical violation of the stay, but asserts

---

[1] It should be noted at this juncture that Mr. Schooley objected to the Debtor's motion partly on the grounds that the relief sought by the Debtor should have been requested by way of complaint and adversary proceeding under F. R. B. P. 7001. This Court agrees. However, Mr. Schooley, agreed to go forward with the hearing on the Debtor's motion, so as to not to cause the Debtor to incur additional costs which inevitably would have resulted had the Debtor been required to file a complaint and pursue the requested relief as an adversary proceeding.

[2] Paragraph 2 of §362(k) provides that a debtor's recovery is limited to actual damages when the violation is committed by an entity whose action was taken in the good faith belief that subsection (h) applies to the debtor. Subsection (h), in turn, involves the termination of the stay as to personal property of the estate when the debtor fails to timely file a statement of intention or fails to take timely action specified in the statement of intention. Thus, paragraph (2) does not apply to the facts here.

3

that it was an "innocent violation" and denies that it was "willful", thus negating the imposition of damages. In addition, Fiesbeck alleges that the Debtor did not suffer any actual damages and therefore should not be permitted to recover attorney fees.

Fiesbeck has directed the Court to two cases. The first case, *In re Harris*, 374 B.R. 611 (Bankr. N. D. Ohio 2007), involved a hospital which, after receiving notice of the debtor's bankruptcy petition, failed to remove the debtor's name from its internal billing system and inadvertently sent the debtor two billing notices. Upon receiving the notices, the debtor referred them to her bankruptcy attorney, who contacted the hospital, informed them of the violation of the stay and demanded $10,000 in settlement for the debtor's alleged mental and emotional stress caused by the notices. The hospital denied its actions were in violation of the stay and assured the debtor's attorney that no additional notices would be sent and offered to settle the matter for $250. The debtor's attorney replied and again reiterated that the hospital had violated the stay, but offered to settle the matter for $5000.

The hospital admitted it violated the stay but argued that no sanctions should be imposed because the violation was "inadvertent" and the hospital took remedial steps to prevent additional notice from being sent. The court pointed out that a mere existence of a violation of the stay did not entitle a debtor to damages, unless the violation was willful. The bankruptcy court noted that a violation was willful if the creditor knew of the stay and violated it by an intentional act. 374 B.R. at 615. Once a violation was determined to be willful, however, an award of damages was mandatory under §362(k)(1) as long as there was resulting injury, and attorney fees could stand on their own as actual damages. *Id*. at 616. The only requirements in awarding attorneys fees

4

as damages was that they must be reasonable and bear a reasonable relationship to the amount in controversy. Thus, "significant awards of attorney fees are rarely appropriate where the debtor has no other damages besides the attorneys fees". *Id*. The bankruptcy court awarded only minimal attorney fees of $218.75 for a matter it pointed out could have been resolved by a telephone call.

The second case, *In re Galmore,* 390 B.R. 901 (Bankr. N. D. Ind. 2008), involved a judgment creditor who caused a bench warrant to be issued against the debtor prepetition but failed to have it recalled post petition. The creditor attended the debtor's §341 meeting and caused the debtor to be arrested and taken into custody by the U.S. Marshals Service. Rejecting as not credible the creditor's naive version of the events that transpired when the creditor entered the federal building and handed the court security officer a stack of papers (among them the outstanding bench warrant), the Court found that the creditor instead attended the §341 meeting with the intent to cause the bench warrant to be executed, and the debtor to be incarcerated.

### *The Violation Must be "Willful"*

The critical issue in *Galmore*, as in this case, was whether the violation of the stay was willful. After an extensive discussion of what is a "willful" violation and the types of damages awardable upon such a finding, the court determined that the judgment creditor willfully violated the stay not only by the actions taken in the §341 meeting, but also by his failure to recall the bench warrant once he received notice of the bankruptcy filing. The debtor failed to appear in the hearing and testify as to the actual compensatory damages she suffered, but the court nonetheless found that the imposition of punitive damages was warranted. Because the parties had earlier

stipulated that damages would be limited to $1100, the court did not award punitive damages but instead awarded the stipulated amount of $1100 as attorney fees.

*Galmore* set forth the elements a debtor needs to prove in order for a debtor to recover damages under §362(k). The debtor must prove that (1) a bankruptcy petition was filed; (2) the debtor is an "individual" under the automatic stay provisions; (3) the creditor had notice of the petition; (4) the creditor's actions were in willful violation of the stay and (5) the debtor is entitled to a form of relief provided by §362(k). There is no dispute as to the first three elements; it is the willfulness of Fiesbeck's violation, and the damages, if any, recoverable by the Debtor that are at issue. As both *Galmore* and *Harris* demonstrate, the "willfulness" hurdle is not a high one to clear, as the creditor's knowledge of the pending bankruptcy petition is all that is required, and *not* a showing of *specific intent to violate the stay*. Rather, if the debtor can show that the creditor intended to commit the act that lead to the violation of the stay after the creditor became aware of the pending bankruptcy, the violation is "willful". *Galmore*, 390 B.R. at 907 ("Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay, and a violation is willful when a creditor acts intentionally with knowledge of the bankruptcy...[a] willful violation does *not,* however, require specific intent to violate the automatic stay"); *Harris*, 374 B.R. at 616. ("..the actor must have only intended the act which violated the stay").

The Court finds here that Fiesbeck's violation of the stay was willful. Fiesbeck had not yet been formally notified of the Debtor's pending bankruptcy because he most likely had not received the §341 Meeting Notice when he contacted the Debtor on July

18th. But, Fiesbeck did receive notice of the bankruptcy when Fiesbeck called the Debtor on July 18th and came to the Debtor's house on July 19th. The Debtor has proven the fourth element that Fiesbeck's action were willful in that Fiebeck had knowledge of the bankruptcy filing.

### *"Actual" Damages*

Once it is determined that a creditor's violation is willful, an award of damages is mandatory as long as there is resulting injury. *Harris*, 374 B.R. at 616. Fiesbeck asserts that the Debtor suffered no deprivation of property and therefore no injury resulted. Fiesbeck further asserts that injury is a prerequisite to an award of attorney fees and therefore such fees are not warranted.

Contrary to Fiesbeck's assertion that no attorney fees can be awarded without proof of other actual damages, attorney fees *were* awarded absent proof of other actual damages in the *Galmore* case, one of the cases cited by Fiesbeck. In fact, the *Galmore* court believed punitive damages could be ordered but for a stipulation between the parties, even though the debtor did not appear at the hearing and testify as to actual damages. Here, the Debtor did appear and testify on direct examination that he was "upset" when Fiesbeck called and that the contacts had an "impact" on his "quality of life". However, no value was placed on these things and therefore, the Debtor's only actual damages appear to be attorney fees incurred in bringing this action.

Attorney fees *are* actual damages for §362 purposes, and no other injury is required. *Harris*, 374 B.R. at 616. The fee award must be reasonable and bear a

7

reasonable relationship to the amount in controversy.  *Id*.  Mr. Leonard, the Debtor's attorney, requested $1000 in attorney fees.  Mr. Leonard consulted with the Debtor, discussed the case with Fiesbeck, drafted and filed the motion, and prepared for and attended the January 21st hearing on the motion which lasted nearly an hour.  The Court believes Mr. Leonard's request for attorney fees of $1000 is reasonable.

### *Punitive Damages*

The Court next considers whether to award punitive damages. As stated in *Galmore*, "[p]unitive damages should only be awarded with respect to conduct which is tantamount to 'thumbing one's nose at' the law, the debtor and the Court".  *Galmore*, 390 B.R. at 908.  The factors considered in whether to award punitive damages are (1) the nature of the creditor's conduct, (2) the nature and extent of harm to the debtor; (3) the creditor's ability to pay damages; (4) the creditor's level of sophistication, (5) the creditor's motives, and (5) provocation, if any, by the debtor.  *Id*.   Here, Fiesbeck received the §341 Meeting Notice which clearly indicated that contacting the debtor by "phone, mail or otherwise" were among the actions prohibited once the Debtor filed bankruptcy.  There was conflicting testimony as to *when* Fiesbeck discovered that he was not to contact the Debtor directly.  Fiesbeck insisted that, at least before December 5th, "no one" had told him not to contact the Debtor directly.  The Debtor testified that he, as early as July 18th or 19th, repeatedly told Fiesbeck as much, yet Fiesbeck contacted him on at least six occasions between July 18th and December 5th.  The Court finds the Debtor's testimony to be more credible.  Regardless, Fiesbeck testified that he knew by December 5th that he was not to contact the Debtor directly but

8

nevertheless did so. As early as August 13th, Fiesbeck was not only aware of the bankruptcy filing but also that any of his concerns would be communicated to the Debtor and Debtor's counsel through Mr. Schooley because Mr. Schooley entered his appearance for Fiesbeck in the bankruptcy case on that date. Despite the clear language of the §341 Meeting Notice and the Debtor's repeated admonitions, Fiesbeck continued to contact the Debtor directly which the Court views as "thumbing his nose" at the Court and the Debtor. The Court finds that Fiesbeck has a respectable level of business sophistication given his capacity to loan the Debtor $154,000, and that he also has the ability to pay a minimal award of punitive damages. Therefore, the Court finds that punitive damages of $1000 are warranted and reasonable.

### *Order*

Thus, it is hereby ORDERED that David Fiesbeck pay to the Debtor's counsel $1000 in attorney fees and $1000 in punitive damages within fifteen (15) days of the date of this order.

# # #

Distribution:

Colby Leonard, Attorney for the Debtor
J. Bradley Schooley, Attorney for David Fiesbeck
Case Trustee
United States Trustee